BERNARD COONEY, Respondent, v. SOUTHERN ELECTRIC RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, May 2, 1899.

1. **Damages for Injury**: ELECTRIC STREET RAILWAY: NEGLIGENCE. In the case at bar if it be conceded that plaintiff did see the car approaching when he undertook to cross the track and that he thereby recklessly exposed himself to danger, this did not make him an outlaw. Held, it was still the duty of the motorman to use every effort to avoid striking him.

2. ———: ———: AVERMENT: PROOF. It was not necessary to aver in the petition the loss of a certain amount of earnings nor that a certain amount was expended for medicines provided such allegations were generally made; it is sufficient if the value of the time lost or the amount paid for medicines is established by the evidence.

*Appeal from the St. Louis City Circuit Court.*—HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

PATRICK LEAHY and A. R. TAYLOR for respondent.

We submit that this evidence, if true, showed either that defendant's motorman was not doing his duty in keeping a vigilant watch or that he did not stop the cars as required by both the common law and the ordinance in the shortest time and space possible on the first appearance of danger to the wagon. That this was his duty at the common law, we cite Bunyan v. Railroad, 127 Mo. 18. And, of course, such was his duty if the ordinance was in force. The next reason urged by appellant why his demurrer to the evidence is grounded, or supposed to be, on the opinion in the case of Saunders v. Railroad, 48 S. W. Rep. 859. This opinion, at once in conflict with all law previously decided in this state,

with the exception of Fath v. Railroad, 105 Mo. 537, supposed by the author of the opinion to sustain his view, and Moran v. Palace Car Co., 134 Mo. 650. The latter in an *obiter dictum,* says that a municipal government can not by ordinance, create a liability between citizens. A proposition no one contests. But until these decisions, the courts of this state had always held that a violation of an ordinance passed by a city valid in its passage, was negligence that might be introduced in evidence to support a common law action for injury caused by its violation. Karle v. Railroad, 55 Mo. 476; Drane v. Railroad, 86 Mo. 574; Hanlan v. Railroad, 104 Mo. 381; Easley v. Railroad, 113 Mo. 236; Brannock v. Elmore, 114 Mo. 55. Such ordinance is valid and operative even in defendant's private yards. Grube v. Railroad, 98 Mo. 336; Merz v. Railroad, 88 Mo. 672. In Bunyan v. Railroad, 127 Mo. 18, the supreme court, in passing upon this precise point, held: "It was the duty of the gripman and other employees to keep a vigilant watch for persons on or approaching the track and when discovered in danger to use every possible effort consistent with the safety of passengers to avoid striking them. This duty does not depend upon the fact that the person had negligently placed himself in the position of danger. The previous negligence of such persons would constitute no defense to an action for an injury resulting from a neglect of these duties. To the same effect: Hanlon v. Railroad, 104 Mo. 389; Fiedler v. Railroad, 107 Mo. 645; Hicks v. Railroad, 124 Mo. 115.

LUBKE & MUENCH for appellant.

The defendant gave this bond and the same was approved by the mayor and municipal assembly. This was a special agreement with the city for the city's benefit, and limited to $10,000. Suit upon the bond could only be brought in accordance with the statute regulating actions on penal bonds. R. S. 1889, p. 282, secs. 866-871. Unless judgment is entered

Cooney v. So. Electric R'y Co.

in conformity with this statute for the penalty of the bond with execution for the damages assessed, it will be reversed. State to use Gates v. Fitzpatrick, 64 Mo. 185; State ex rel. Cochran v. Cooper, 79 Mo. 464. The motorman was not obliged to confine his attention to plaintiff's team and wagon; his duties required him also to look elsewhere on the street, forward and right and left. Kennedy v. Railway, 43 Mo. App. 4 and 5. It was plaintiff's duty to look and listen, and if by so doing he might have seen the car and kept out of the way of danger, then his omission in this respect barred a recovery in this suit. And in all such cases the courts will disregard the say-so of witnesses, if the physical facts prove there was negligence in these respects, and will direct a non-suit, or reverse absolutely a judgment for plaintiff. Payne v. Railroad, 136 Mo. 576-593; Weaver v. Railroad, 60 Mo. App. 210; Culbertson v. Railway, 140 Mo. 37.

BIGGS, J.—The defendant owns and operates a double track electric street railway in the city of St. Louis. Its line of road extends north and south along Broadway. Schirmer street intersects Broadway at right angles. On the twenty-seventh of December, 1897, the plaintiff was driving his covered vehicle south on Broadway, in the vicinity of Schirmer street. After passing the intersection of Schirmer street, he traveled along the west side of defendant's railway for a distance of about one hundred feet. He then attempted to cross the railroad tracks and drove diagonally across the west track, which is used by cars going south; and just as the hind wheels of the wagon were passing over the eastern rail, the wagon was struck from behind by a car going south. The wagon was demolished and the plaintiff was severely injured. He sues in this action for the personal injuries and for damages to the wagon. There were two assignments of negligence in the petition: First: That the motorman negligently, and carelessly failed to keep a proper watch for the

vehicles moving on the street, and negligently failed to stop or check the speed of the car, but suffered it to collide with plaintiff's wagon.     Second: That the motorman negligently failed to observe the requirements of a general ordinance of the city of St. Louis, whereby it is provided "that the motorneers and conductors in charge of electric cars should keep a vigilant watch for all vehicles either upon defendant's track or moving toward it, and upon the first appearance of danger to such vehicle or person the car should be stopped within the shortest time and space possible." The petition further averred that in consideration of the grant by the city of St. Louis of the privilege to so operate its cars, the defendant undertook to obey the provisions of said ordinance.    The answer contains a general denial and a plea of contributory negligence.    The trial resulted in a judgment for $1,250, from which the defendant has appealed.

I.    The circuit court rightly refused to nonsuit the plaintiff.    According to his evidence the collision occurred about one hundred and twenty-five feet south of the south line of Schirmer street; that the plaintiff drove his team in a slow walk; that for the first one hundred feet he traveled along the west side of and near to the railway track; that the wheels on the east side of the wagon were about one foot from the west rail; that he then drove diagonally across the track so that the wheels of his wagon straddled the west rail of the west track; that he traveled in this way for about twenty-five feet, when he attempted to cross to the east side of the tracks, and that when his wagon was almost across the west track it was struck by the car.    The plaintiff's evidence also tended to prove that just before crossing Schirmer street he looked north and saw no car; that north of that point the street is straight for several blocks and is of even grade; that the motorman failed to ring the bell at the crossing of Schirmer street; that the car was then running at the rate of about ten miles an hour; that the motorman failed to ring the bell

before the collision, and that he made no attempt to check the speed of the car until it was too late to avoid the accident. Assuming the truth of this evidence one of two conclusions is irresistible, either that the motorman was not keeping a proper watch, and hence failed to see the danger to which plaintiff was exposed, or if he did see it, he failed to make the proper efforts to stop the car. According to plaintiff's evidence the danger of collision was perfectly apparent while his wagon was being driven a distance of twenty-five feet over and along the west track. At the rate of speed at which the car was running the motorman ought to have first discovered the dangerous situation of the wagon, at a distance of at least one hundred and twenty-five feet from it. As all the evidence tended to show that the car under the circumstances could have been stopped within sixty feet, it is plain that if the motorman saw the danger he failed to make proper efforts to stop the car, or if he did not see the danger it was by reason of his failure to keep a vigilant watch, for he could have seen it if he had only looked.

II.  Concerning the alleged non-observance of the ordinance mentioned in the petition and read in evidence, the circuit court on its own motion gave the following instruction, to which the defendant objected and excepted: "The jury are also instructed that the company had the right of way over its railroad track, and that it was the duty of Cooney, before driving on said track, to look and to listen for the approach of the defendant's car, and to exercise ordinary care upon his part to avoid a collision with said car. And if, from all the evidence, the jury believe that Cooney failed to look and listen, and failed to exercise the care aforesaid, and thereby directly contributed to his being injured, then the verdict should be for the company; *unless you further believe that the defendant's motorneer, by the exercise* INSTRUCTION. *of proper care and vigilance could have avoided the injury by stopping his cars upon*

*the first appearance of danger within the shortest time and space possible with the means and contrivances on hand, but negligently failed to do so."* The argument against the instruction is that it assumes that there was some evidence that the defendant corporation, in consideration of the privilege of constructing and operating its road, had agreed and contracted with the city of St. Louis to observe the provisions of the ordinance. In Fath v. Street Railway Co., 105 Mo. 537, and Saunders v. Street Railway Co., 48 S. W. Rep. 855, it is decided that to entitle a citizen to recover under the ordinance for injuries resulting from its non-observance it must be shown that the street railway company agreed with the city to observe it. The assumption that there is no evidence here to show such a contractual relation is not well founded in fact. The ordinance in question was enacted many years prior to the enactment of the special ordinance in 1894 enlarging and granting to defendant the franchise under which it now operates its road. This latter ordinance required the defendant to file with the city register its acceptance "of all the provisions of the ordinance," which the defendant did. The ordinance contemplated a change in the motor power of defendant's railway, and among other things, required the defendant to enter into a bond to the city of St. Louis to indemnify the city and all persons against damages during the construction and operation of the road, etc. The conditions of the bond are as follows: "And if the said railroad company, its successors and assigns, will comply with all the terms and conditions of said ordinances *and all general ordinances and charter provisions of said city of St. Louis, now in force, or that may hereafter be passed in reference to street railways,* then this obligation to be void," etc. By the terms of this bond the defendant expressly contracted with the city to observe all existing and future ordinances affecting or pertain-

BOND.

ing to street railways in the city of St. Louis. This brings the question within the decisions in the Fath and Saunders cases. The instruction was justified under the evidence, and the defendant's objection to it must be overruled.

III. Complaint is made to the following instruction given by the court at the instance of the plaintiff: "If the jury believe from the evidence that on the 27th day of December, 1894, Broadway and Schirmer streets, at the places mentioned in the evidence, were public streets within the city of St. Louis, and that the defendant was operating the street cars mentioned in the evidence for the purpose of transporting persons for hire from one point to another within the city of St. Louis; and if the jury find from the evidence that on the evening of said day the plaintiff was driving his team and wagon south on Broadway on defendant's track, and that whilst doing so defendant's southbound car collided with the rear of plaintiff's wagon, was injured and his harness and horses injured, and plaintiff was injured upon his head and body; and if the jury further find from the evidence that the defendant's motorman in charge of its said car saw, or by the keeping of a vigilant watch for persons on foot and vehicles, either on the track or moving towards defendant's track, and in danger of being injured by said car, would have seen plaintiff's wagon on defendant's track, or moving towards it, and in danger of injury by defendant's car; *and thereafter could have averted said injury and collision and injury to plaintiff and his property, and neglected to do so,* then defendant is liable in this case, whether the plaintiff exercised ordinary care to look out for said cars or not. And in that event the negligence of the plaintiff is no defense to this action, *provided he did not know of the approach of said cars or the danger therefrom.*" The objections are directed to the italicized portions of the instruction. It is urged that the clause "and thereafter *could* have averted said collision and injury to plaintiff and his property, and neglected to do

so," rendered the defendant liable if the motorman by any *possibility* could have prevented the accident. The latter part of the sentence "and neglected to do so," relieves the instruction from just criticism. The words imply negligence or want of ordinary care on the part of the motorman in the management of the car and excludes the idea that the company was to be held if it was possible for the motorman to have avoided the collision. It is claimed that the last paragraph of the instruction, to wit, "provided he did not know of the approach of said cars or the danger therefrom," in effect nullified the plea of contributory negligence which was in the case. We are unable to comprehend the force of this argument. It seems to us that this clause in the instruction was prejudicial to the plaintiff if to any one. It might be inferred from it, although it is clear from other instructions that it was not meant, that although the motorman was guilty of negligence and could have avoided the accident by the exercise of ordinary care, yet if plaintiff knew that the car was approaching and that he was in a dangerous position, he could not recover. This is not the law. Concede that plaintiff did see the car approaching when he undertook to cross the track and that he thereby recklessly exposed himself to danger, this did not make him an outlaw. It was still the duty of the motorman to use every effort to avoid striking him. "This duty," as was said by Judge Macfarlane in Bunyan v. Citizens Railway Co., 127 Mo. 12, "does not depend upon the fact that the person had negligently placed himself in the position of danger. *The previous negligence of such person would constitute no defense to an action for an injury resulting from neglect of these duties."*

IV. In the instruction as to the measure of damages, the jury was directed to take into consideration loss of earnings and cost of medicines. It was not necessary, as claimed by appellant, to aver in the petition the loss of a certain amount of earn-

PLEADINGS.

ings, nor that a certain amount was expended for medicines, provided such allegations were generally made, which was done. It is sufficient if the value of the time lost or the amount paid for medicines is established by the evidence. Duke v. Railroad, 99 Mo. 347; Smith v. Railroad, 108 Mo. 243.

The brief of appellant contains criticisms of other instructions, which we need not discuss. Our conclusion is that the case was fairly presented to the jury, and the judgment of the circuit court will be affirmed. All the judges concur.